UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH MINKOWSKI,<br><br>Plaintiff,<br><br>v.<br><br>CAVALRY SPV I, LLC,<br><br>Defendant. | CIVIL ACTION 1:14-cv-04903<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR RELIEF PURSUANT
TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

NOW COMES the Plaintiff, KENNETH MINKOWSKI ("Kenneth"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, CAVALRY SPV I, LLC ("Cavalry"), as follows:

**NATURE OF THE ACTION**

1. Kenneth brings this action for damages for Cavalry's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA") and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et. seq. ("ICFA").

**JURISDICTION AND VENUE**

2. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k(d), 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391, as Cavalry conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

## PARTIES

4. Kenneth is a natural person who resides in the Northern District of Illinois and is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3).

### Cavalry SPV I, LLC

5. Defendant Cavalry SPV I, LLC ("Cavalry") is a Delaware limited liability company with its principal place of business at 28405 Van Dyke Avenue, Warren, Michigan 48093. Cavalry conducts and transacts business in Illinois. Cavalry's Illinois registered agent is C T Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

6. Cavalry is in the business of taking title or claiming to take title to charged-off debts allegedly owed by consumers and originally owed to others.

7. Cavalry then seeks to enforce the alleged debts against the consumers through lawsuits.

8. The mails and telephone system are used in connection with the prosecution of the Cavalry lawsuits.

9. Cavalry is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

## FACTS SUPPORTING CAUSE OF ACTION

10. Cavalry has been attempting to collect from Kenneth a debt alleged to have been originally owned by HSBC Bank Nevada, N.A. ("HSBC account").

11. On or about October 30, 2013, Cavalry, through its attorney, Law Office of Keith S. Shindler, Ltd. ("Shindler"), filed a one page complaint ("complaint") in the Circuit Court of McHenry County, Illinois against Kenneth. The case was captioned *Cavalry SPV I, LLC v. Kenneth P Minkowski*, case number 2013 SC 2948 ("collection case"). *See* Exhibit A, a true and correct copy of the complaint and affidavit.

2

12. In the complaint, Cavalry alleges that it purchased and now owns the HSBC account. The complaint was solely supported by the affidavit of Sharon Jones ("Jones affidavit"), a purported employee of Cavalry, dated September 6, 2013. *Id.*

### The Debt Buying Industry

13. Cavalry is a debt buyer. Debt buying is the practice of purchasing charged-off debts from debt originators, or other debt buyers. These debts are purchased in bulk and are usually credit card debts.

14. The debts sold are typically bundled into portfolios because bundling accounts into portfolios reduces the transaction costs of exchange. *See* Federal Trade Commission, The Structure and Practices of the Debt Buying Industry, January 2013, available at http://www.ftc.gov/reports/structure-practices-debt-buying-industry (last visited May 1, 2014) ("FTC Debt Buyer Report").

15. When purchased, these bundled account portfolios are transferred via electronic data files that contain only a few data elements from the original account records. When printed out, the electronic evidence of the sale, or data file, consists of one line per debtor.

16. The typical data file contains the original account number, the name of the consumer, the address of the consumer, the last balance purportedly owed, the date of the last payment, and the date that the account was charged-off. *Id.* at pp. 34-35.

17. Debt buyers generally do not obtain the original account records (the day-to-day transactions on the account that are generally made at or near the time of each transaction, in the normal course of business) related to the purchased debts. For most portfolios, buyers do not receive any documents at the time of purchase. Only a small percentage of portfolios include documents such as account statements or the terms and conditions of credit. *Id.* at p. iii.

3

18. The data files obtained by debt buyers are not the original account records that were created in the regular course of business by the credit originator—they are created prior to the sale of a portfolio of charged off debts. They are created for sale to a third party, and are not created in the regular course of servicing the credit card account.

19. Furthermore, debt sales are typically "as-is" with limited or no ability to obtain additional information from the original creditor. *See* FTC Debt Buyer Report at p. 25.

20. Where different debt buyers enter into purchase and sale agreements with the same seller, the structure, organization, and phrasing of these agreements are virtually identical. *Id.* at pp. 24-25.

21. Cavalry relied on the information that it obtained from HSBC (the data file) when it filed the collection case.[1]

22. However, Cavalry had absolutely no assurance that the information it received was accurate because, on information and belief, HSBC (or HSBC's successor in interest) sold its debts to Cavalry in "as-is" condition.

23. The information on which Cavalry relied to file the state court action would not be considered satisfactory evidence if submitted to court. A document is not admissible as a "business record" under Illinois law if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness …" Illinois R. Evid. 803(6).

24. It is common practice in the industry to purchase debts without obtaining original account information due to the time and cost of obtaining such documentation.

---

[1] It is actually unclear from the complaint or the Jones affidavit whether Cavalry obtained the data file directly from HSBC, or from a subsequent debt-buyer. Regardless, if the HSBC account was sold, it was done so in the manner described above; any subsequent buyer would have received the one-line data file "as-is."

**Pattern and Practice in State Court Collection Actions**

25. Cavalry routinely files state court collection actions with no more evidence of the debt in question than the single line data file described above.

26. Cavalry knows that the information on which it relies to file the state court collection actions will not be supported with adequate evidence, yet Cavalry is not willing or not able to obtain such evidence.

27. Usually when Cavalry files a collection action they obtain a default judgment against the consumer.

28. Upon information and belief, the default rate in such lawsuits may be as high as ninety percent.

29. The default rate is so high in the collection actions because Cavalry serves the consumer with a complaint and affidavit affirming Cavalry's ability to prove the information contained therein.

30. The purpose of such affidavits is to deceive the consumer into believing that Cavalry can prove the case at trial and to intimidate the consumer into paying the amount claimed.

31. The collection case affidavits are deceptive because they appear to be based on a review of "business records" transferred to Cavalry from the original creditor. *See* Exhibit A. In truth, the affidavits are created from the limited information contained in the one-line data file that Cavalry purchased "as-is."

32. By submitting such an affidavit to the consumer, while concealing documents in which the alleged account seller effectively disclaims the accuracy of its records and information, Cavalry perpetrates a fraud on the consumer.

5

33. Accordingly, the consumer is discouraged from defending the lawsuit or challenging the allegations contained in the complaint and affidavit.

34. Cavalry actively conceals the nature of their defective standing in hopes that an unsophisticated consumer would not know that these "as-is" purchase agreements exist.

35. An unsophisticated consumer would not be aware of the elements of the business records exception to the rule against hearsay.

36. When Cavalry files a collection action against a consumer, they implicitly represent that the allegations and factual contentions contained in the complaint and affidavit are backed by evidentiary support. Federal Rule of Civil Procedure 11(B)(3) states:

> Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> []
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery
>
> Fed R. Civ. Proc. 11(B)(3).

37. In these *ex parte* collection actions, Cavalry does not disclose to the court that they have not conducted a reasonable investigation into their claims or that they would never have presented evidence to support those claims. *See* Comment 14 to Rule 3.3 of the Illinois Rules of Professional conduct, which states: "… in any *ex parte* proceeding … [t]he lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision."

38. Cavalry does not conduct a reasonable investigation into a debt's existence in the collection actions it files; rather Cavalry intends to obtain a default judgment against the consumer by representing to the consumer and the court, through the filing of the complaint and affidavit, that they have evidence to support the claims stated therein.

39. This practice amounts to an unfair, deceptive and improper use of the court system in connection with the collection of a debt.

40. A recent supervisory report issued by the Consumer Finance Protection Bureau states that its examiners found that, in 70% of lawsuits filed by a debt buyer, the debt buyer dismissed its case when the consumer filed an answer. Consumer Financial Protection Bureau, *Supervisory Highlights*, Spring 2014, pg. 14, available at: http://files.consumerfinance.gov/f/201405_cfpb_supervisory-highlights-spring-2014.pdf (last visited June 11, 2014).

41. The report stated, "Despite the entity's express or implied representations to consumers that it intended to establish that consumers owed a debt in the amount claimed in court filings, in numerous instances, the entity misled consumers because it demonstrably had no such intention." *Id.*

42. Once the default judgment is entered, Cavalry can proceed to garnishment of the debtor's wages regardless of whether they could have proved their case at trial.

43. Cavalry routinely voluntarily dismisses cases where the consumer appears before the court to defend the action in order to protect their business model and avoid losing at trial.

### Collection Case

44. Kenneth was served with the summons and complaint in the collection case in October, 2013.

45. The Jones affidavit indicates that Jones reviewed business records by stating that Jones is "familiar with and have access to the books and records of Cavalry SPV I, LLC and of Cavalry Portfolio Services, LLC." before executing the affidavit. *See* Exhibit A.

46. The Jones affidavit further states, "In the normal course of business, Cavalry Portfolio Services, LLC maintains computerized account records for account holders." *Id*.

47. The Jones affidavit also states that "Cavalry Portfolio Services, LLC maintains such records in the ordinary and routine course of business and is charged with the duty to accurately record any business act, condition or event onto the computer record maintained for the accounts, with the entries made at or very near the time of any such occurrence." *Id*.

48. The complaint alleges that Kenneth owes a debt amount of $3,201.84 to Cavalry. *Id.*

49. As stated in paragraphs 17 and 18 above, any "records transferred" to Cavalry were created for the purpose of selling the debt portfolio that allegedly contained the subject debt (i.e. the electronic data file); not "made at or near the time" of the event, as required by the Illinois Rules of Evidence 803(6).

50. On December 3, 2013, Kenneth appeared on the collection case pro se and the case was continued to February 13, 2013 with Court instructions for the Cavalry to provide documentation to Kenneth. *See* Exhibit B, a true and correct copy of the December 3, 2013 collection case Order.

51. On February 13, 2014, Kenneth filed an appearance by and through his attorneys, Sulaiman Law Group, LTD. ("Sulaiman") in the collection case. *See* Exhibit C, a true and correct copy of Kenneth's appearance.

52. On February 13, 2014, the collection case was set for trial on May 15, 2014 with the Court granting Kenneth's counsel leave to file their appearance instanter. *See* attached Exhibit D, a true and correct copy of the February 13, 2014 collection case Order.

53. On May 15, 2014, counsel for Kenneth appeared in the collection case and the case was dismissed without prejudice. *See* attached Exhibit E, a true and correct copy of the May 15, 2014 Order dismissing Kenneth's case.

54. It can be reasonably inferred that Cavalry voluntarily dismissed the collection case because Cavalry knew that they could not demonstrate the accuracy of the information contained in the complaint.

55. The Illinois Code of Civil Procedure requires that a plaintiff provide notice to the defendant when the plaintiff intends to voluntarily dismiss its case. See 735 ILCS 5/2-1009.

56. Cavalry never provided Kenneth with formal notice of their intention to dismiss the collection case—notice was not provided in writing, no motion was filed with the court, and Counsel did not receive even verbal notice until the day of trial.

57. Even if Cavalry had intended to take the collection case to trial, they would have been unable to prevail at trial due to their lack of evidence described above.

58. By operation of law, Cavalry has one year or until the statute of limitations expires, whichever is longer, to re-file its case against Kenneth.

59. Kenneth is left to wonder when or if he will be served with another summons containing another deceptive affidavit.

60. This uncertainty has caused Kenneth significant stress and emotional distress.

61. Kenneth was harmed by Cavalry's unfair and deceptive practices because he had to spend time and energy defending against Cavalry's frivolous lawsuit.

62. Kenneth was further harmed by Cavalry's unfair and deceptive practices, as he incurred costs defending against Cavalry's frivolous lawsuit, including retaining Counsel.

## COUNT I – VIOLATIONS OF THE
## FAIR DEBT COLLECTION PRACTICES ACT AGAINST CAVALRY

63. Kenneth repeats and realleges paragraphs 1 through 62 as though fully set forth herein.

64. Cavalry's conduct was misleading and unfair to the unsophisticated consumer.

65. Cavalry violated 15 U.S.C. §1692e by using a false, deceptive, or misleading representation or means in connection with the collection of the subject debt when it failed to inform Kenneth of their intention of dismissing the collection case.

66. Furthermore, Cavalry violated 15 U.S.C. §1692e by using a false, deceptive, or misleading representation or means in connection with the collection of the subject debt when it caused the complaint and Jones affidavit to be served on Kenneth.

67. The complaint and Jones affidavit are inherently deceptive, false, and misleading because they purport to be based on trustworthy business records, when in fact, they are based on unverified information that Cavalry acquired "as-is."

68. Furthermore, Cavalry violated 15 U.S.C. §1692e(10) by using a false representation or deceptive means in connection with the collection of the subject debt when it caused the complaint Jones affidavit to be served on Kenneth.

69. Again, the complaint and Jones affidavit are inherently deceptive because they purport to be based on trustworthy business records, when in fact, they are based on unverified information that Cavalry acquired "as-is."

70. Cavalry violated 15 U.S.C. §1692(f) by using unfair means to collect or attempt to collect the subject debt as Cavalry's filing of the collection case, while knowing that it could not prevail

at trial, was unfair because Kenneth had to spend time and money defending against a frivolous lawsuit.

71. As a direct result of Cavalry's conduct, Kenneth has suffered actual damages.

72. As plead in paragraphs 60 through 62 above, Kenneth was harmed by Cavalry's deceptive actions.

73. As a result of the above violations of the FDCPA, Kenneth is entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k.

WHEREFORE, Plaintiff, KENNETH MINKOWSKI, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. ordering the deletion of all adverse credit reporting related to the alleged debt;

d. awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e. awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFA") AGAINST CAVALRY

74. Kenneth restates and realleges paragraphs 1 through 62 as though fully set forth herein.

75. Cavalry violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in its efforts to collect an unverified debt from Kenneth.

76. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of

> any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

> 815 ILCS 505/2.

77. Kenneth is a consumer as defined by ICFA, 815 ILCS 505/1(e).

78. Cavalry's attempt to collect a debt is part of the conduct of any trade or commerce as defined by ICFA, 815 ILCS 505/1(f).

79. Cavalry's pursuit of the collection case represents the use of deception, fraud and false pretense as Cavalry knew that it could not prove its case at trial.

80. Cavalry intended that Kenneth rely on its misrepresentations.

81. ICFA further states:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper.

> 815 ILCS 505/10a.

82. As a direct result of Cavalry's false statements, Kenneth has suffered actual damages.

83. As plead in paragraphs 60 through 62 above, Kenneth was harmed by Cavalry's false representations.

84. Moreover, upon information and belief, these unfair and deceptive practices are part of a pattern and practice of behavior in which Cavalry routinely engages as part of its business model.

85. An award of punitive damages is appropriate because Cavalry's conduct described above was willful and wanton, and showed a reckless disregard for the protections afforded by ICFA, and Kenneth's rights thereunder.

86. As such, Kenneth is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff, KENNETH MINKOWSKI, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff actual damages and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. ordering the deletion of all adverse credit reporting related to the alleged debt;

d. awarding the Plaintiff costs and reasonable attorney fees; and

e. awarding any other relief as this Honorable Court deems just and appropriate.

Dated: June 30, 2014                    Respectfully Submitted,

/s/ Mohammed O. Badwan
Mohammed O. Badwan, Esq. ARDC#6299011
Daniel J. McGarry, Esq. ARDC#6309647
Counsel for Plaintiff
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188